NICHOLS KASTER, LLP
Matthew C. Helland, CA Bar No. 250451
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Phone: (415) 277-7235
Fax: (415) 277-7238

NICHOLS KASTER, PLLP
John G. Albanese, MN Bar No. 0395882*
jalbanese@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878

FRANCIS & MAILMAN, P.C.
Mark D. Mailman*
Erin A. Novak*
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

*_pro hac vice_ applications forthcoming

Attorneys for Plaintiff Christopher Taylor

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>IDC TECHNOLOGIES, INC. and FIRST ADVANTAGE BACKGROUND SERVICES CORP.,<br><br>Defendants. | Case No.: 5:15-cv-02929<br><br>**COMPLAINT**<br>**FOR DAMAGES**<br>(1) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3);<br>(2) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b);<br>(3) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Christopher Taylor, by and through his attorneys, brings the following Complaint against IDC Technologies, Inc. ("IDC") and First Advantage Background Services Corporation ("First Advantage") for violations of the Fair Credit Reporting Act ("FCRA") arising out of a background check that erroneously portrayed Plaintiff as a serial criminal.

## THE PARTIES

1.      Plaintiff Christopher Taylor is an individual person and a resident of Minnesota.

2.      Defendant IDC Technologies, Inc. is a "premier technology services organization" headquartered in Milipitas, California. http://www.idctechnologies.com/about-us/.

3.      First Advantage is a consumer reporting agency headquartered in Atlanta, Georgia that provides more than 54 million background checks annually and has over 350 million criminal records as part of its database. http://www.fadv.com/Portals/0/Downloads/infographics/FADV-OurStory-Infographic-v12-041715.pdf.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## INTRADISTRICT STATEMENT

6.      Pursuant to L.R. 3-2(c) and (e), this action is properly assigned to the San Jose Division of the Northern District of California because a substantial portion of the events giving rise to the dispute occurred in Santa Clara County, California.

1

## THE FCRA'S PROTECTIONS FOR JOB SEEKERS

2      7.      Despite its name, the Fair Credit Reporting Act covers more than just credit

3  reporting, and regulates criminal background checks like the one procured on Plaintiff.

4      8.      The FCRA provides a number of protections for job seekers who are

5  subjected to background checks.

6      9.      In the parlance of the FCRA, criminal background checks are "consumer

7  reports," and providers of criminal background checks like First Advantage are "consumer

8  reporting agencies."  15 U.S.C. §§ 1681a(d), f.

9      10.      The FCRA requires that any person who uses a report for employment

10  purposes must:

11
> [B]efore taking any adverse action based in whole or in part on the
12      report… provide to the consumer to whom the report relates—

13      a. a copy of the report; and

14      b. a description in writing of the rights of the consumer under this
15          subchapter, as prescribed by the [Consumer Financial
          Protection] Bureau under section 1681g(c)(3).

16

17  15 U.S.C. § 1681b(b)(3).

18      11.      The pre-adverse action notification provision protects applicants and

19  employees by "provid[ing] the consumer with knowledge of information the [consumer

20  reporting agency] has reported about him or her that is going to result in adverse action in

21  an employment context, affording the individual an opportunity to respond to it."  FTC

22  Advisory     Opinion     to     Leathers     (Sept.     9,     1998),     available     at

23  http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98; *see also*

24  *Moore v. Rite Aid Hdqtrs Corp,* No. CIV.A. 13-1515, 2015 WL 3444227, at *4 (E.D. Pa.

25  May 29, 2015) *citing Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp.

26  2d 532, 537 (E.D. Pa. 2012) ("Section 1681b(b)(3)(A) thus requires an employer to

27  provide job applicants with their background report, summary of rights, and a "real

28  opportunity" to contest the contents of the background report before the employer relies

1    on the report to take an adverse action against the applicant.").  This requirement is

2    particularly important "where the information contained in the report (such as a criminal

3    record) would automatically disqualify the individual from employment," so that the

4    consumer has a chance to address the information "in case the report is inaccurate."  FTC

5    Advisory     Opinion     to     Rosen,     (June     9,     1998),     available     at

6    http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98.

7         12.    Before they procure any background reports, users of consumer reports for

8    employment purposes must certify to the consumer reporting agency that they have

9    complied with the FCRA's disclosure provisions and will comply with its pre-adverse

10   action notice provisions.  15 U.S.C. § 1681b(b)(1).

11        13.    The FCRA also imposes duties on consumer reporting agencies to ensure

12   that consumer reports are accurate and that "consumer reporting agencies exercise their

13   grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

14   privacy."  15 U.S.C. § 1681.

15        14.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to

16   follow reasonable procedures to assure maximum possible accuracy of the information

17   concerning the individual about whom the report relates."

18        15.    Upon receiving a dispute from the consumer, a consumer reporting agency

19   is required to "conduct a reasonable reinvestigation to determine whether the disputed

20   information is accurate."  15 U.S.C. § 1681i(a)(1)(A).

21        16.    As described below, Defendants wholly disregarded these duties with

22   respect to Plaintiff's background check.

23                    **PLAINTIFF'S INACCURATE BACKGROUND CHECK**

24        17.    Plaintiff Christopher Taylor is an information technology professional.

25        18.    In February 2015, Plaintiff signed a six-month contract with IDC to

26   provide services to IDC client MoneyGram in St. Louis Park, Minnesota.  The contract

27   was to pay $52/hour.  The agreement specified Plaintiff was to begin work on February

28   16, 2015.

19.     As part of the application process, IDC required that Plaintiff submit to a background check.  Before procuring his background check, IDC informed Plaintiff that it intended to procure a background report.

20.     In order to enable IDC to run the check, Plaintiff provided his date of birth.

21.     IDC procured a consumer report on Plaintiff from consumer reporting agency First Advantage.

22.     Per his contract, Plaintiff reported for his first day of work on February 16, 2015 at MoneyGram.

23.     When Plaintiff arrived for work, nobody was at the MoneyGram office. Plaintiff called IDC and spoke with IDC's client manager.  After apologizing for not having someone contact Plaintiff earlier, the IDC representative explained that due to the fact that February 16 was a federal holiday, Plaintiff would start on Tuesday, February 17. The representative further advised Plaintiff to wait for someone to contact him before reporting to work.

24.     On February 17, Plaintiff received a call from an IDC representative who explained that due to red flags in Plaintiff's background check, he could not start his job.

25.     Later that day, Plaintiff received in the mail a copy of a background check that First Advantage had provided to IDC, attached as Exhibit A.

26.     First Advantage sent him the report pursuant to its obligation under 15 U.S.C. § 1681k(a)(1) to provide notice to the consumer when it supplies a report for employment purposes that includes public record information.

27.     IDC did not send the report to Plaintiff, and did not notify him it intended to take adverse action based on the report's contents.

28.     At the time Plaintiff received the report, he had already been told he could not work for IDC.  Moreover, the letter from First Advantage explicitly stated that it was not a notice that Plaintiff had been rejected for employment, and informed him that correspondence about his acceptance or rejection would be sent separately.

29.    First Advantage's report was grossly inaccurate, and erroneously reported that Plaintiff had four criminal convictions—for trespass, felony robbery, theft, and felony burglary.

30.    In reality, all of the convictions belong to Dwayne Taylor, who is Plaintiff's brother.

31.    Although Dwayne and Plaintiff were both born on the same month and day, they were born six years apart, have different names, different addresses, and different social security numbers.  The Minnesota Judicial Branch records in Exhibit B show that each conviction listed on First Advantage's report belongs to "Dwayne Taylor." Those records further show that Dwayne Taylor's date of birth is precisely six years before Plaintiff's date of birth.  The judicial records also show that Dwayne lived in Minneapolis.  Plaintiff did not live in Minneapolis at the time of Dwayne's arrests and convictions.

32.    First Advantage failed to maintain reasonable procedures, such as consulting actual court records, and monitoring its reports to ensure that names and dates of birth match, when preparing Plaintiff's report.

33.    Upon receiving the First Advantage report, Plaintiff proactively obtained a certification from the Minnesota Bureau of Criminal Apprehension ("BCA"), which showed that none of the four convictions listed on the First Advantage report belong to him.

34.    On February 20, 2015, just three days after being informed he would not be allowed to commence employment because of his background report, Plaintiff faxed IDC the BCA certification.

35.    IDC, however, still did not allow Plaintiff to begin work and continued to tell him that he would not be able to work for IDC.

36.    IDC never provided Plaintiff with a copy of the background check it received from First Advantage as required by 15 U.S.C. § 1681b(b)(3).  Nor did IDC

1   provide Plaintiff with a reasonable time to dispute the results of the report before taking an

2   adverse action against him.

3        37.     On February 20, 2015, Plaintiff also disputed the convictions on his report

4   to First Advantage. First Advantage, however, did not reasonably reinvestigate Plaintiff's

5   dispute.

6        38.     Despite Plaintiff's dispute, First Advantage failed to consult actual court

7   records and failed to review Plaintiff's report to ensure that names and dates of birth

8   matched when conducting its reinvestigation.

9        39.     First Advantage refused to correct Plaintiff's report.

10       40.     As part of its service agreement with its customers, First Advantage

11  requires that its subscribers contact First Advantage to obtain special procedures for

12  preparation and use of a consumer report in the case of suspected misconduct or violation

13  of state, federal, or local law. Plaintiff's report was not procured using these special

14  procedures.

15       41.     Plaintiff's report was not procured in connection with any investigation of

16  suspected misconduct relating to employment, or compliance with federal, state, or local

17  laws and regulations, the rules of a self-regulatory organization, or any preexisting written

18  policies of the employer.

19       42.     As of result of Defendants' conduct, Plaintiff was unable to pay his rent

20  and had to vacate his home. He has suffered actual damages in the form of lost income,

21  harm to reputation, and emotional distress, including embarrassment and humiliation.

22                              **DEFENDANTS' CONDUCT WAS WILLFUL**

23       43.     Defendants negligently violated the FCRA.

24       44.     Defendants' violations of the FCRA were not only negligent, but were also

25  knowing and willful.

26       45.     By failing to provide Plaintiff with a copy of his report and a summary of

27  his rights *before* taking an adverse action against him, IDC violated the clear statutory

28  mandate set forth in 15 U.S.C. § 1681b(b)(3).

46.    IDC was aware of the requirements of 15 U.S.C. § 1681b(b)(3).

47.    On its website, First Advantage warns its customers that:

> If the consumer report contains information, in whole or in part, that will negatively impact the employment opportunities of the applicant or employee the employer must provide all of the following BEFORE such an adverse action is made

- A preadverse action notice,
- A copy of the consumer report; and
- A summary of rights the applicant has under the FCRA.
  This document is drafted by the CFPB.

*See* "FCRA Overview," http://www.fadv.com/fcra.aspx (last accessed May 20, 2015).

48.    IDC had also previously certified to First Advantage that it would comply with § 1681b(b)(3).

49.    Despite its awareness of the FCRA's straightforward and pellucid requirements of 15 U.S.C. § 1681b(b)(3), IDC knowingly or recklessly disregarded its FCRA duties with respect to Plaintiff.

50.    First Advantage is aware of FCRA's clear mandates "to follow reasonable procedures to assure maximum possible accuracy" and to perform "reasonable reinvestigations." 15 U.S.C. §§ 1681e(b), i.

51.    First Advantage knows that it is common for criminal records to be erroneously attributed to the wrong person. In fact, First Advantage, and its predecessor LexisNexis Screening Solutions, Inc., have been sued repeatedly for erroneously reporting criminal information regarding consumers. *See, e.g., Smith v. LexisNexis Screening Solutions, Inc.*, No. 13-CV-10774, 2014 WL 7403890, at *1 (E.D. Mich. Dec. 30, 2014) (upholding $375,000 jury verdict when background check company erroneously reported criminal convictions).

52.    Despite this, First Advantage unreasonably and willfully failed to check the underlying court records, and failed to ensure names and dates of birth matched before issuing Plaintiff's erroneous report to IDC.

53.     First Advantage also unreasonably and willfully failed to check the underlying court records, and failed to ensure names and dates of birth matched as part of its reinvestigation of Plaintiff's dispute.

**CLAIMS FOR RELIEF**
**COUNT I: 15 U.S.C. § 1681b(b)(3)**
**Failure to Provide Pre-Adverse Action Notice**
**(Against IDC Technologies)**

54.     Plaintiff realleges the allegations set forth in Paragraphs 1-53.

55.     IDC violated the FCRA by negligently and willfully failing to comply with the pre-adverse action procedures set forth in 15 U.S.C. § 1681b(b)(3).

56.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to his actual damages, statutory damages, punitive damages, costs and attorneys' fees.

**COUNT II: 15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against First Advantage)**

57.     Plaintiff realleges the allegations set forth in Paragraphs 1-53.

58.     First Advantage negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's consumer report.  15 U.S.C. § 1681e(b).

59.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to his actual damages, statutory damages, punitive damages, costs and attorneys' fees.

**COUNT III: 15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against First Advantage)**

60.     Plaintiff realleges the allegations set forth in Paragraphs 1-53.

61.     Upon receiving a dispute from Plaintiff, First Advantage negligently and willfully failed to perform a reasonable reinvestigation of First Advantage's erroneous report in violation of 15 U.S.C. § 1681i.

62.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to his actual damages, statutory damages, punitive damages, costs and attorneys' fees.

-9-

1

**PRAYER FOR RELIEF**

2       63.     WHEREFORE, Plaintiff prays for relief as follows:

3         a.   Declaring that Defendants negligently violated the FCRA;

4         b.   Declaring that Defendants willfully violated the FCRA;

5         c.   Awarding actual damages, statutory damages, and punitive damages as

6             provided by the FCRA;

7         d.   Awarding reasonable attorneys' fees and costs as provided by the FCRA;

8         e.   Granting other and further relief, in law or equity, as this Court may deem

9             appropriate and just.

10

**DEMAND FOR JURY TRIAL**

11       64.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

12 demands a trial by jury.

13

14                           Respectfully submitted,

15 Dated: June 24, 2015            NICHOLS KASTER, LLP

16                           By: /s/Matthew C. Helland

17                             Matthew C. Helland

18                           ATTORNEY FOR PLAINTIFF

19

20

21

22

23

24

25

26

27

28

COMPLAINT, Case No. 5:15-cv-02929