UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER TAYLOR,

        Plaintiff,

    v.

FIRST ADVANTAGE BACKGROUND
SERVICES CORP,

        Defendants.

Case No.  15-cv-02929-DMR

**ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Re: Dkt. Nos. 81, 83

United States District Court
Northern District of California

      Plaintiff Christopher Taylor filed suit alleging violations of the Fair Credit Reporting Act ("FCRA").  Plaintiff alleges that IDC Technologies, Inc. ("IDC") rescinded his job offer after reviewing a background check prepared by Defendant First Advantage Background Services Corp ("First Advantage" or "Defendant").[1]  The background check mistakenly attributed another person's criminal record to Plaintiff.  Plaintiff alleges that Defendant willfully and negligently violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy, 15 U.S.C. §1681e(b), and failing to conduct the required reinvestigation of two disputed misdemeanor convictions, 15 U.S.C. § 1681i(a)(1)(A).

      Plaintiff and Defendant have each filed motions for partial summary judgment.  Plaintiff moves for partial summary judgment on his claim that Defendant negligently violated the FCRA's reinvestigation requirements.  Plaintiff's Motion for Partial Summary Judgment ("Pl.'s MSJ") [Docket No. 81].  Defendant moves for summary judgment on Plaintiff's section 1681e(b) claim, contending that any alleged inaccuracies in its reporting of criminal convictions originated with

---

[1] Plaintiff has dismissed all claims against IDC Technologies, Inc.  Stipulation to Dismiss IDC Technologies [Docket No. 66].  First Advantage is the sole defendant in this suit.  For this reason, all references to "Defendant" are to First Advantage.

the Minnesota Department of Public Safety, a state governmental agency, and are not attributable to Defendant's procedures.  Defendant also moves for partial summary judgment on Plaintiff's claims that Defendant acted willfully.  Defendant contends that Plaintiff has no evidence demonstrating that it acted in reckless disregard of its FCRA duties.  Defendant's Motion for Partial Summary Judgment or Summary Adjudication ("Def.'s MSJ") [Docket No. 83].

## I.     BACKGROUND

### A.     Factual Background

The facts recounted in this section are undisputed, unless otherwise noted.

Plaintiff Christopher Taylor is an IT professional.  Plaintiff applied for a position through IDC to work for TCS/Moneygram.  On February 6, 2015, IDC offered Plaintiff a six-month contract for the position.  IDC's offer to Plaintiff was contingent on successful completion of a background check.  IDC obtained a background check on Plaintiff from Defendant First Advantage.  On February 10, 2015, Defendant mailed Plaintiff a copy of the criminal background information it was reporting to IDC.  The criminal background information included four criminal convictions sustained in Hennepin County, Minnesota: two felonies for robbery and burglary, and two misdemeanors for theft and trespass.

None of these convictions are Plaintiff's.

As set forth in the court records, the four convictions belong to Dwayne Taylor, not Plaintiff.  Plaintiff and Dwayne Taylor share the same birth month and day, but were born in different years and have different names.  Defendant identified the four criminal convictions by searching its own national criminal file database.  Defendant did not obtain the court records corresponding to the convictions, but did send a researcher to Hennepin County courthouse to search for records matching Plaintiff's name and date of birth.  The researcher did not find any reportable records for Plaintiff.  Defendant did not attempt to reconcile the result of the researcher's efforts with the conviction records it located through a search of its own criminal records database.

On February 11, 2015, Defendant sent IDC the report, which included the four criminal convictions.  On February 20, 2015, Plaintiff contested the accuracy of the four convictions on his

United States District Court
Northern District of California

1   report by faxing Defendant a completed dispute form.  Plaintiff listed the convictions by case

2   number and stated that they did not belong to him.  Upon receipt of Plaintiff's dispute,

3   Defendant's employee entered a description of the dispute into Defendant's Consumer Dispute

4   Management System.  The employee only entered two of the disputed case numbers — those

5   corresponding with the two reported felony convictions (Case Nos. 09319757 and 07338193) —

6   and failed to enter the two disputed misdemeanors into the system (Case Nos. 06301128 and

7   07201094).  On March 18, 2015, Defendant removed the two felony convictions from Plaintiff's

8   report and sent a revised copy of the report to IDC that still included the two misdemeanor

9   convictions.

10      IDC rescinded Plaintiff's conditional contract, and he was not hired for a position at

11  TCS/Moneygram.

12      **B.      Procedural History**

13      Plaintiff filed his complaint against IDC and First Advantage on June 24, 2015.  [Docket

14  No. 1.]  On May 27, 2016, Plaintiff dismissed all claims against IDC with prejudice.  [Docket No.

15  66.]  On July 18, 2016 both Plaintiff and Defendant filed these motions for partial summary

16  judgment.  [Docket Nos. 81, 83.]

17  **II.   LEGAL STANDARDS**

18      A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

19  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The burden

20  of establishing the absence of a genuine issue of material fact lies with the moving party, *see*

21  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the

22  light most favorable to the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation

23  omitted).  A genuine factual issue exists if, taking into account the burdens of production and

24  proof that would be required at trial, sufficient evidence favors the non-movant such that a

25  reasonable jury could return a verdict in that party's favor. *Anderson v. Libby Lobby, Inc.*, 477

26  U.S. 242, 248.  The court may not weigh the evidence, assess the credibility of witnesses, or

27  resolve issues of fact. *See id.* at 249.  Because summary judgment is a "drastic device," cutting off

28  a party's right to present its case to a jury, the moving party bears a "heavy burden" of

United States District Court
Northern District of California

1   demonstrating the absence of any triable issue of material fact. *Ambat v. City & Cty. of San*

2   *Francisco*, 757 F3d 1017, 1031 (9th Cir. 2014).

3        To defeat summary judgment once the moving party has met its burden, the nonmoving

4   party may not simply rely on the pleadings, but must produce significant probative evidence, by

5   affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that

6   a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

7   F.2d 626, 630 (9th Cir. 1987) (citations omitted). In other words, there must exist more than "a

8   scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252;

9   conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738

10   (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is

11   blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

12   adopt that version of the facts" when ruling on the motion. *Scott*, 550 U.S. at 380. Where there is

13   no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or

14   defense, the district court may enter partial summary judgment. Fed. R. Civ. P. 56(a).

15        Where, as here, the parties have each filed motions for summary judgment, "[e]ach motion

16   must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside

17   Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion

18   separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

19   **III.    LEGAL FRAMEWORK APPLICABLE TO PLAINTIFF'S FAIR CREDIT
          REPORTING ACT CLAIMS**

20        Congress enacted the FCRA, 15 U.S.C. §§ 1681–1681x, to "ensure fair and accurate credit

21   reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins.

22   Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Because consumer reporting agencies[2] ("CRAs")

23

---

24   [2] Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary

25   fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice
   of assembling or evaluating consumer credit information or other information on consumers for

26   the purpose of furnishing consumer reports to third parties, and which uses any means or facility
   of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. §

27   1681a(f). The parties agree that Defendant is a consumer reporting agency as defined by the
   FCRA. Joint Statement of Undisputed Facts ("Jt. Stmt.") at ¶ 3.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

"have assumed a vital role in assembling and evaluating consumer credit" information, the FCRA imposed a set of duties upon CRAs to insure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009); 15 U.S.C. § 1681(a)(3)–(4).

The duties imposed on CRAs under the FCRA include the duty to ensure the accuracy of their reporting, 15 U.S.C. § 1681e(b), and the duty to conduct a reasonable reinvestigation of disputed information, 15 U.S.C. § 1681i.

### A. Reasonable Procedures to Assure Maximum Possible Accuracy of the Information - 15 U.S.C. § 1681e(b)

Under section 1681e(b), CRAs have a duty to ensure the accuracy of a consumer report.[3] Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Liability under § 1681e(b) is predicated on the reasonableness of the [CRA]'s procedures in obtaining credit information." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995).

### B. Reasonable Reinvestigation of Disputed Information - 15 U.S.C. § 1681i

Section 1681i(1)(A) obligates CRAs to reinvestigate disputes when the completeness or accuracy of an item of information has been challenged. Section 1681i(1)(A) provides:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the [CRA] shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(1)(A).

### C. Liability for Willful and Negligent Noncompliance

A consumer can assert a private cause of action for willful and/or negligent noncompliance

---

[3] The parties agree that Plaintiff's background report constitutes a consumer report under the FCRA. Jt. Stmt. at ¶ 6.

with the FCRA.  15 U.S.C. §§ 1681n (willful), 1681o (negligent).

### 1.    Willful Noncompliance

The FCRA provides:

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

**(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

**(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

**(2)** such amount of punitive damages as the court may allow; and

**(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

Under the FCRA, a plaintiff may demonstrate willfulness by showing a reckless disregard of statutory duty.  *Safeco,* 551 U.S. at 56–60.  A CRA acts in reckless disregard if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Bateman v. American Multi–Cinema*, 623 F.3d 708, 711 n. 1 (9th Cir. 2010) (quoting *Safeco*, 511 U.S. at 69).  That is, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* (quoting *Safeco*, 511 U.S. at 68).

Actual damages are not required where FCRA violations are willful.  *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-13 (9th Cir. 2014) (the FCRA "does not require a showing of actual harm when a plaintiff sues for willful violations"), *vacated and remanded on other grounds sub nom. Spokeo, Inc. v. Robins*, ___ U.S. ____, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) (citing 15 U.S.C. § 1681n(a)).  If a plaintiff can prove a willful violation of the FCRA, the plaintiff will be entitled to statutory damages of $100 to $1,000 for each such violation, or any actual damages. 15 U.S.C. § 1681n(a)(1)(A); *Bateman,* 623 F.3d at 711.

### 2.    Negligent Noncompliance

The FCRA provides:

**(a)** In general

6

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a).  In the absence of contrary congressional intent, negligence must be given its common law meaning.  *Safeco,* 511 U.S. at 58.  The "standard of conduct required to avoid negligence [is] that of a reasonably prudent person under similar circumstances."  *Banga v. Chevron U.S.A. Inc.*, No. C-11-01498 JCS, 2013 WL 71772, at *11 (N.D. Cal. Jan. 7, 2013) (quoting *Almaraz v. Universal Marine Corp.,* 472 F.2d 123, 124 (9th Cir. 1972)) (applying standard to FCRA claim under 15 U.S.C. § 1681o).

In order to make a claim for negligent noncompliance, a plaintiff must establish actual damages.  15 U.S.C. § 1681o(a)(1); *see also Banga v. Experian Information Solutions, Inc.,* 473 Fed. App'x. 699, 700 (9th Cir. 2012) (citing *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751–52 (9th Cir. 2001)).  However, the Ninth Circuit has made clear that "liability . . . [is not] predicated, as a matter of law, on the occurrence of some event—denial of credit or transmission of the report to third parties—resulting from the compilation and retention of erroneous information."  *Guimond*, 45 F.3d at 1333.

A plaintiff's actual damages can include recovery for emotional distress.  *Drew v. Equifax Information Servs., LLC,* 690 F.3d 1100, 1109 (9th Cir. 2012) (citing *Guimond,* 45 F.3d at 1333); *see also Banneck v. HSBC Bank USA, N.A.*, No. 15-CV-02250-HSG, 2016 WL 3383960, at *8 (N.D. Cal. June 20, 2016) ("[A]n FCRA plaintiff may prove a claim for actual damages by showing that a credit reporting agency's maintenance of inaccurate credit records or unreasonable investigation of a credit dispute has resulted in emotional harm or humiliation, even where credit was not denied.").

"To survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements."  *Centuori v. Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002, 1010 (D. Ariz. 2006) (internal quotation marks and citation omitted).  The Ninth

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    Circuit does require objective evidence of emotional distress.  *See Zhang v. Am. Gem Seafoods,*

2    *Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (as to emotional distress damages, "[w]hile objective

3    evidence requirements may exist in other circuits, such a requirement is not imposed by case law

4    in the Ninth Circuit, or the Supreme Court"); *Johnson v. Hale*, 13 F.3d 1351, 1352–53 (9th Cir.

5    1994) ("[C]ompensatory damages may be awarded for humiliation and emotional distress

6    established by testimony or inferred from the circumstances, whether or not plaintiffs submit

7    evidence of economic loss or mental or physical symptoms.").

## IV.    PLAINTIFF'S FCRA CLAIMS

9        In his complaint, Plaintiff identifies four claims for relief: 1) negligent failure to follow

10   reasonable procedures to assure maximum possible accuracy, 15 U.S.C. § 1681e(b); 2) willful

11   failure to follow reasonable procedures to assure maximum possible accuracy, 15 U.S.C. §

12   1681e(b); 3) negligent failure to perform a reasonable reinvestigation, 15 U.S.C. § 1681i; and 4)

13   willful failure to perform a reasonable reinvestigation, 15 U.S.C. § 1681i.  Compl. at ¶¶ 57-62.

## V.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

15       Plaintiff seeks partial summary judgment on his third claim, that Defendant negligently

16   failed to conduct a reasonable reinvestigation in response to his dispute in violation of 15 U.S.C. §

17   1681i(a).

18       Under the FCRA, a CRA must reasonably reinvestigate an item in a consumer's credit file

19   once the consumer directly notifies the agency of a possible inaccuracy.  15 U.S.C. §

20   1681i(a)(1)(A).  This provision also requires a CRA to review and consider all relevant

21   information submitted by the consumer, and promptly provide the credit grantor of the disputed

22   item with all relevant information regarding the dispute.  *Id.* §§ 1681i(a)(2)(B), (a)(4).  The CRA

23   must then promptly delete or modify the item based on the results of the reinvestigation.  *Id.* §

24   1681i(a)(5)(A).  In order to state a claim for negligent violation of section 1681i, Plaintiff must

25   establish that: 1) his credit files contained inaccurate or incomplete information; 2) he directly

26   notified Defendant of the inaccuracy; 3) the dispute is not frivolous or irrelevant; 4) Defendant

27   failed to respond to the dispute; and 5) Defendant's failure to reinvestigate caused Plaintiff to

28   suffer actual damages.  *Peterson v. Am. Express*, No. CV-14-02056-PHX-GMS, 2016 WL

1158881, at *4 (D. Ariz. Mar. 23, 2016) (quoting *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1098 (D. Ariz. 2003); *Darrin v. Bank of Am., N.A.*, No. 2:12-CV-00228-MCE, 2014 WL 1922819, at *7 (E.D. Cal. May 14, 2014) (citing *Thomas v. Trans Union, LLC,* 197 F. Supp. 2d 1233, 1236 (D. Or. 2002)).

Specifically, Plaintiff moves the court to find that: 1) Plaintiff notified Defendant of his dispute regarding all four criminal convictions that appeared on his background check; 2) Defendant did not reinvestigate the two misdemeanor cases that Plaintiff disputed; and 3) no reasonable jury could find that Defendant's failure to reinvestigate was anything short of negligent.  Pl.'s MSJ at 6.  Plaintiff does not move for summary judgment on the issues of causation or damages.

There are no genuine disputes of material fact regarding the legal elements of Plaintiff's section 1681i claim that are at issue in this motion.  To begin with, Defendant's background report included inaccuracies.  The Ninth Circuit requires "that a plaintiff filing suit under [§] 1681i must make a 'prima facie showing of inaccurate reporting.'"  *Carvalho*, 629 F.3d at 890.  Here, it is undisputed that all four criminal convictions that Defendant listed on Plaintiff's background check were inaccurate because the convictions did not belong to Plaintiff.  Jt. Stmt. at ¶¶ 11, 13-16. "[I]nformation that is inaccurate 'on its face,' is 'patently incorrect.'"  *Starkey v. Experian Info. Sols., Inc.*, 32 F. Supp. 3d 1105, 1108 (C.D. Cal. 2014) (quoting *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012).

The four criminal convictions mistakenly attributed to Plaintiff cannot be considered frivolous or irrelevant.  It is also undisputed that Plaintiff contested all four criminal convictions directly with Defendant.  Jt. Stmt. at ¶¶ 17- 18.

Once Plaintiff notified Defendant of his dispute about the accuracy of the criminal convictions on his report, Defendant had a duty to "conduct a reasonable reinvestigation to determine whether the disputed information [was] inaccurate."  15 U.S.C. § 1681i(a)(1)(A).  It is undisputed that Defendant did not reinvestigate the two misdemeanor cases that Plaintiff disputed in February 2015.  Def.'s Resp. to Request for Admission No. 2; Albanese Decl. Ex. L; O'Connor

United States District Court
Northern District of California

Dep. 98:13-20.[4]

In the face of these undisputed facts, Defendant makes two arguments in an attempt to defeat partial summary judgment. First, Defendant argues that Plaintiff's motion should not be granted because it improperly moves for summary judgment on only a portion of the section 1681i claim, and omits the elements of causation and damages.[5] In reply, Plaintiff confirms that he is moving for partial summary judgment on portions of his section 1681i claim. Plaintiff agrees with Defendant that genuine issues of material fact remain with respect to causation and damages, which must be decided by a jury.

Plaintiff is correct that he may move for partial summary judgment on a portion of his section 1681i claim. The language of Rule 56(a) explicitly states that a party properly may move for summary judgment on a "part of each claim or defense." Fed. R. Civ. P. 56(a). The Advisory Committee Note to the 2010 Amendment explains that subdivision (a) was amended to "make clear [that] . . . summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase 'partial summary judgment' to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion." Fed. R. Civ. P. 56(a) advisory committee's note to the 2010 amendment.

Defendant relies on inapposite cases where the plaintiff failed to raise a genuine issue of material fact on the issue of damages.[6] "The FCRA permits recovery for emotional distress and

---

[4] Matthew O'Connor is the Vice President of Operations at First Advantage. O'Connor Decl. in support of Def.'s MSJ [Docket No. 83-9] at ¶ 2. O'Connor testified as a 30(b)(6) deponent for First Advantage in this case.

[5] Defendant contends that Plaintiff cannot move for partial summary judgment as to parts of his claim, but must demonstrate every essential element. *See* Def.'s Opp'n at 1 quoting *Garcia v. Soule*, No. C07-0438 MMC, 2010 WL 728041, at *6 (N.D. Cal. Feb. 26, 2010) ("plaintiff must demonstrate that the evidence presented, taken as a whole, establishes beyond controversy *every essential element* of the claim.") (emphasis added in Def.'s Opp'n). *Garcia* is inapposite. There, the court considered the plaintiff's motion for full summary judgment on his due process, retaliation, unlawful policy, and conspiracy claims and did not consider whether a plaintiff could move for partial summary judgment as to part of a claim.

[6] Defendant cites *Banga v. Experian Info. Sols., Inc.*, 473 F. App'x 699 (9th Cir. 2012) and *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044 (C.D. Cal. 2014), *reconsideration denied*, No. CV 13-07450 MMM, 2015 WL 1909584 (C.D. Cal. Apr. 27, 2015). Def.'s Opp'n at

United States District Court
Northern District of California

humiliation." *Drew*, 690 F.3d at 1109.  "To survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements." *Centuori*, 431 F. Supp. 2d at 1010 (internal quotation marks and citation omitted); *see also Acton*, 293 F. Supp. 2d at 1101 (plaintiffs' own allegations of emotional distress constitute evidence "sufficient to create a question for the jury, particularly when all . . . possible inferences are resolved in [their] favor").

Here, Plaintiff has submitted adequate evidence of causation and damages to put these issues before a jury.  Plaintiff testified that when he received the revised report and saw that the misdemeanors had not been removed, he felt "totally upset, just totally blown away," and "more worried and more concerned" and "anxious about interviewing."  Taylor Dep. 185:1-5.  He explained, "I mean everything my company is built on, and my integrity, and that I based my brand off of, it was just totally destroyed by that report on me, and I felt it, just felt – just felt helpless.  It took away a lot of my confidence."  Taylor Dep. 185:9-15.  Plaintiff further explained, "I felt that that report was damaging to me.  I was feeling anxious about getting it cleaned up and corrected immediately, and that didn't happen.  So, yes, I had anxiety attacks, anxious, sleepless nights, and just tension in the house, and frustration, helplessness."  Taylor Dep. at 187:14-20.  Plaintiff also testified that his inability to work "caused tension through the whole household."  Taylor Dep. at 183:18-21; 184:14-21 ("I always provided for the family, so it caused a lot of tension in the house.  It cause – you know, it's like everyone is looking at you like you're worthless, you know.  I don't know if you ever had that feeling, probably not.  But it's a helpless feeling, what can you do.  So there was a lot of tension in the household.").

---

5. Both are distinguishable.  In *Banga*, the Ninth Circuit affirmed the trial court's grant of summary judgment in favor of defendant for negligent violation of section 1681o where the plaintiff failed to raise a triable dispute as to whether the defendants' conduct resulted in actual damages.  *Banga*, 473 F. App'x at 700.  In *Grigoryan*, the court granted summary judgment in favor of defendants on Grigoryan's claims for negligent violation of the FCRA to the extent he sought to recover damages connected to his real estate investment business or his alleged attempt to invest in a restaurant franchise because those damages either were suffered by non-party, non-consumer limited liability companies, or reflected the use of a credit report for business or commercial purposes, outside the purview of the FCRA.  *Grigoryan*, 84 F. Supp. 3d at 1082, 1086.

United States District Court
Northern District of California

1    Defendant's second argument is that it intends to raise a "reasonable procedures" defense,

2   and that material issues of fact remain regarding that defense, rendering summary judgment

3   inappropriate.  Defendant cites *Lenox v. Equifax Info. Servs. LLC*, No. 05-1501-AA, 2007 WL

4   1406914 (D. Or. 2007); *Acton*, 293 F. Supp. 2d at 1099; and *Thomas v. Trans Union, LLC.*, 197 F.

5   Supp. 2d 1233, 1237 (D. Or. 2002) in support of its position that a reasonable procedures defense

6   applies to claims under 15 U.S.C. § 1681i.

7    In reply, Plaintiff argues that: 1) Defendant did not raise a reasonable procedures defense

8   in its answer and thereby waived it; and 2) in any event, there is no cognizable "reasonable

9   procedures" defense against claims brought under 15 U.S.C. § 1681i(a)(1)(A).

10    An answer must "state in short and plain terms" the defenses to each claim asserted against

11   the defendant in order to provide plaintiffs with fair notice of the defense(s).  Fed. R. Civ. P.

12   8(b)(1)(A).  The general rule is that a defendant should assert affirmative defenses in its first

13   responsive pleading.  Fed. R. Civ. P. 8(c).  The Ninth Circuit has liberalized this requirement.

14   *Magana v. Com. of the Northern Mariana Islands,* 107 F.3d 1436, 1446 (9th Cir. 1997), *as*

15   *amended* (May 1, 1997); *see also Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1023 (9th Cir.

16   2010).  A defendant "may raise an affirmative defense for the first time in a motion for summary

17   judgment only if the delay does not prejudice the plaintiff."  *Magana,* 107 F.3d at 1446 (holding

18   that district court erred in granting summary judgment for defendants without determining

19   whether their delay in raising their affirmative defense three months after filing their answer

20   prejudiced the plaintiff); *see also Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 921 (N.D. Cal.

21   2014) (prohibiting individual defendants from asserting affirmative defense raised for the first

22   time two years and nine months after complaint was amended to add the relevant claims; finding

23   that plaintiffs would be prejudiced because they would have no opportunity to conduct discovery

24   on the issue); *Ulin v. Lovell's Antique Gallery,* 2010 WL 3768012, at *13 (N.D. Cal. 2010)

25   (prohibiting the defendants from raising FLSA exemption defense at summary judgment; finding

26   that plaintiff would be prejudiced because he could not conduct discovery on the defense); *Tyco*

27   *Thermal Controls LLC v. Redwood Industrials*, No. C 06-07164 JF (PVT), 2010 WL 1526471, at

28   *11 (N.D. Cal. Apr. 15, 2010) (rejecting plaintiff's attempt to assert innocent landowner defense

12

United States District Court
Northern District of California

1  after three years of litigation during which defendants had no opportunity to conduct discovery on

2  facts that could support or defeat the defense).

3      Defendant first contends that its "reasonable procedures" defense is not an affirmative

4  defense.  This is not persuasive.  Under Federal Rule of Civil Procedure 8(c), an "affirmative

5  defense is a defense that does not negate the elements of the plaintiff's claim, but instead

6  precludes liability even if all of the elements of the plaintiff's claim are proven." *Barnes v. AT&T*

7  *Pension Benefit Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010)

8  (quoting *Roberge v. Hannah Marine Corp.*, No. 96–1691, 1997 WL 468330, at *3 (6th Cir.

9  1997)); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citing

10  *In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1349 (11th Cir. 1988)).  Defendant's proffered

11  defense is not aimed at negating any of the prima facie elements of Plaintiff's claim for a violation

12  of 15 U.S.C. § 1681i(a)(1).  Rather, Defendant asserts that even if Plaintiff establishes the prima

13  facie elements of his claim, Defendant should not be held liable because it had reasonable

14  procedures in place.  This is an affirmative defense that should have been stated in Defendant's

15  first responsive pleading pursuant to Rule 8(c).

16      At the hearing, the court gave Defendant an opportunity to demonstrate that it had earlier

17  asserted a reasonable procedures defense in response to Plaintiff's section 1681i(a)(1) claim.

18  Defendant did not point to anything in the record establishing that it had raised this affirmative

19  defense prior to its opposition to Plaintiff's Rule 56 motion.  Discovery closed nearly three months

20  ago, on May 27, 2016.  Order Granting Stipulation to Extend Discovery and Pre-Trial Deadlines

21  [Docket No. 61].  Plaintiff contends that if Defendant is permitted to advance its affirmative

22  defense at this late stage of the case, Plaintiff would be prejudiced because he did not know that

23  Defendant was raising such a defense, and therefore did not take the opportunity to conduct

24  discovery on the "broader topic of First Advantage's procedures, as well as their reasonableness"

25  with respect to his section 1681i claim.  Pl.'s Reply at 3.

26      The record demonstrates that Defendant did not raise its reasonable procedures defense in

27  response to Plaintiff's 1681i(a)(1) claim prior to Defendant's opposition to the instant motion.

28  Plaintiff would be prejudiced if Defendant were allowed to raise the affirmative defense for the

United States District Court
Northern District of California

1   first time at summary judgment and after the close of discovery.  For this reason, the court finds

2   that Defendant has waived an affirmative defense of reasonable procedures in regard to Plaintiff's

3   1681i(a)(1) claim, if in fact such a defense exists.[7]

4        For the reasons set forth above, the court grants Plaintiff's motion for partial summary

5   judgment.  The record evidence is undisputed that 1) Defendant's background check on Plaintiff

6   contained non-frivolous inaccuracies; 2) Plaintiff directly notified Defendant of his dispute

7   regarding all four criminal convictions that appeared on his background check; and 3) Defendant

8   did not reinvestigate the two disputed misdemeanor cases.  The court concludes that on these

9   undisputed facts, a reasonable jury could reach no conclusion other than that Defendant's failure

10  to reinvestigate was, at a minimum, negligent.  Defendant has waived a "reasonable procedures"

11  defense, to the extent one exists.  Therefore, the court grants partial summary judgment in

12  Plaintiff's favor on part of his section 1681i claim, and reserves the questions of causation and

13  damages to the jury.

14  **VI.    DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

15       In its motion, Defendant argues that Plaintiff's section 1681e(b) claim fails as a matter of

16  law because the factual inaccuracies in Plaintiff's background report were not attributable to

17  Defendant.  Defendant also moves for summary judgment on Plaintiff's claims that Defendant

18  acted willfully in violating sections 1681e(b) and 1681i.  According to Defendant, Plaintiff has

19  presented no evidence of willfulness.  Def.'s MSJ [Docket No. 83] at 5.

20       "A moving party without the ultimate burden of persuasion at trial—usually, but not

21  always, a defendant—has both the initial burden of production and the ultimate burden of

22  persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

23  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Defendant, who does not bear the burden of

24  persuasion on these issues at trial, must carry its burden on summary judgment either by 1)

25  negating or disproving an essential element of the opposing party's claim or defense through

26

27  ---
    [7]  As Defendant waived the affirmative defense, the court does not reach Plaintiff's alternative

28  argument that a "reasonable procedures" defense is not cognizable in the context of section 1681i.

admissible evidence; or 2) "showing" the opposing party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.  *Id.*

### A.  Whether, as a Matter of Law, the Errors in Defendant's Report are Not Attributable to Defendant for Purposes of Plaintiff's Section 1681e(b) Claim

Defendant argues that Plaintiff's section 1681e(b) claim fails because the factual inaccuracies in Defendant's report originated with the Minnesota Department of Public Safety ("MDPS"), and the errors are not attributable to Defendant.

Liability under section 1681e(b) is predicated on the reasonableness of a CRA's procedures in obtaining credit information.  *Guimond*, 45 F.3d at 1333.  To make out a prima facie violation of section 1681e(b), a consumer must first present evidence tending to show that a CRA prepared a report containing inaccurate information.  *Id.*  As discussed above, Plaintiff has done so here.  However, "the FCRA does not impose strict liability."  *Id.*  A CRA can escape section 1681e(b) liability if it establishes that an inaccurate report was generated despite the fact that it followed reasonable procedures.  *Id.*  "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."  *Id.*

In this case, Defendant located the four erroneous criminal convictions by searching its own national criminal file database.  Defendant populates its database with records received from Experian Public Records ("Experian").  In turn, Experian obtains its information from a variety of criminal record sources, sources of bulk data, and court or governmental agencies throughout the U.S.  Experian obtained Plaintiff's records from MDPS.  Defendant argues that it received the inaccurate information regarding the criminal convictions from MDPS, a "presumptively reliable source."  Defendant asserts that it merely reported the information provided to it by MDPS, and therefore should not be charged with MDPS's inaccuracy.

Defendant's argument centers on its contention that the inaccurate information came from MDPS.  In its brief, Defendant asserts that "it is uncontroverted that any alleged inaccuracies originated with MDPS, the source of the criminal record information."  Def.'s MSJ at 7 (citing O'Connor Decl. at ¶¶ 5-6; O'Connor Dep. 32:19-33:7; 100:17-20; O'Connor Ex. 5 at 2-5).  However, closer examination of the record reveals that Defendant has overstated the evidence.

United States District Court
Northern District of California

1    While the record shows that Defendant obtained information from Experian, which in turn had

2    received it from MDPS, the admissible evidence does not demonstrate that the alleged

3    inaccuracies originated with MDPS.

4         In his declaration, O'Connor baldly states that: "[u]nbeknownst to First Advantage, the

5    MDPS Bureau of Criminal Apprehension had mixed Mr. Taylor's identifiers into criminal records

6    belonging to his brother Dwayne prior to sending those criminal charges to Experian Public

7    Records, the data provider supplying the information to First Advantage's National Criminal

8    File." O'Connor Decl. [Docket No. 83-9] at ¶ 6. This is an unfounded assertion. There is no

9    indication that O'Connor has personal knowledge of these facts or would otherwise be competent

10   to testify to the matters stated.[8] The cited excerpts from the O'Connor deposition state that

11   Defendant's national criminal file database receives information from Experian, and Experian

12   obtained the information regarding Plaintiff from MDPS. Exhibit 5 to the O'Connor deposition is

13   the background report at issue in this case. The exhibit merely lists "MN DPS" as the record

14   source for the convictions; it does not indicate that the error originated in MDPS's processing of

15   criminal records.

16        In any event, Defendant has not alleged that there were any errors or ambiguities on the

17   face of the court's actual criminal conviction records. In this way, the current case is

18   distinguishable from the cases upon which Defendant relies. In *Henson v. CSC Credit Servs.*, 29

19   F.3d 280, 282 (7th Cir. 1994), the state court clerk erroneously noted in the Judgment Docket that

20   a money judgment had been entered against the plaintiff. Two CRAs relied on the Judgment

21   Docket and indicated in the plaintiff's credit report that he owed a money judgment. *Id.* The

22   Seventh Circuit held that "as a matter of law, a credit reporting agency is not liable under the

23   FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior

24   notice from the consumer that the information may be inaccurate." *Id.* at 285. The court reasoned

25   that "reliance on official court records is unlikely to lead to inaccurate credit reporting except in

26   isolated instances. Requiring credit reporting agencies to look beyond the face of every court

27

28   [8] Similarly, Defendant's reply brief argues that "MDPS improperly attributed *Taylor* to a record," but provides no citation to record evidence. Def.'s Reply at 6 (emphasis in original).

document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient." *Id.* at 285-86. By contrast, in this case, Defendant did not review the face of the court documents for the four reported convictions, and does not contend that there were any errors in the court documents themselves.

Defendant also cites *Stewart v. ABSO, Inc.*, No. 3:08-CV-00272-JDM, 2010 WL 3853114, at *10 (W.D. Ky. Sept. 28, 2010). In *Stewart*, the CRA did not rely on an error in an official court record. Rather, it relied on a report generated by the Kentucky Administrative Office of the Courts. *Id.* at *10. The court reasoned that the Kentucky Administrative Office of the Courts is the state-wide repository of official court records, and explained that it would follow the Seventh Circuit's reasoning in *Henson*. *Id.* at *12. However, this portion of the opinion in *Stewart* is dicta, for the court noted that it "need not make a definitive determination regarding whether [the CRA's] procedures were reasonably sufficient to assure maximum possible accuracy," because the plaintiff had made no showing that he suffered an injury that was caused by the inclusion of inaccurate information in the consumer report, as required to sustain of claim of negligent violation of section 1681e(b). *Id.*

Defendant also asks the court to find support for its position in *Darrin v. Bank of Am., N.A.*, No. 2:12-CV-00228-MCE, 2014 WL 1922819, at *6 (E.D. Cal. May 14, 2014) and *Saenz v. Trans Union, LLC,* 621 F. Supp. 2d 1074 (D. Or. 2007). In *Darrin*, the plaintiff had a mortgage with Bank of America and sought a loan modification, for which she was eventually approved. In the process of applying for the loan modification, Bank of America changed the amount of Darrin's monthly payment for her mortgage and also instructed her not to make payments in certain months. *Id.* at *2. When Darrin checked her credit report she discovered that Bank of America had reported a number of her mortgage payments as late. *Id.* The court found that Darrin's section 1681e(b) claims failed against the CRAs, because the CRAs relied on information from Bank of America, and Darrin had presented no evidence that Bank of America was not a reputable source. *Id.* at *7. Similarly, in *Saenz*, the plaintiff brought suit against Transunion under both sections 1681e(b) and 1681i. The court found that the CRA relied on "facially credible information it received from Saenz' creditors," and that the CRA did not violate section 1681e(b)

United States District Court
Northern District of California

1   simply by reporting the information that turned out to be inaccurate.  *Id.* at 1080–81.

2         *Darrin* and *Saenz* are distinguishable.  In both cases, the CRA obtained information from

3   the consumer's creditors, which were the actual and original sources of the information that the

4   CRA was reporting.  In *Darrin*, the court found that the CRA was entitled to rely on facially

5   credible information from the consumer' creditor, Bank of America, about information regarding

6   the consumer's mortgage payments to Bank of America.  Similarly, in *Saenz*, the court found that

7   the CRA was entitled to rely on information it received directly from the consumer's creditors.

8         Here, by contrast, Defendant did not rely on information it obtained directly from the

9   source of information regarding criminal convictions—in this case, the Hennepin County

10  Courthouse.  There is no indication that the court records themselves contained errors.  In fact, the

11  parties have stipulated that the court records for all four criminal convictions bear the name

12  "Dwayne Taylor."  Jt. Stmt. at ¶¶ 13-16.  A cursory review of the name on the court conviction

13  records would show that they belonged to another individual with a different name from Plaintiff.

14  On these facts, the court cannot find for Defendant as a matter of law.

15        Plaintiff points to facts from which a reasonable jury could find for Plaintiff on his section

16  1681e(b) claim.  First, Defendant did not obtain the information directly from MDPS, but rather

17  from Experian, which received the data in bulk from MDPS.  According to Plaintiff, both MDPS

18  and Experian include warnings with the data, such that it would not be presumptively reasonable

19  for a CRA to rely on the accuracy of the data.  Second, Plaintiff argues that the researcher sent by

20  Defendant to the Hennepin County courthouse found no records matching Plaintiff's name and

21  date of birth.  However, Defendant did not search for the court records for the convictions that it

22  actually reported, and did not attempt to reconcile those records with the fact that no records were

23  located for Plaintiff through the courthouse search.  Third, Plaintiff asserts that Defendant

24  produced a background report for U.S. Bank based on Plaintiff's fingerprints just a few months

25  earlier that did not list any criminal conviction records.  However, Defendant did not attempt to

26  reconcile this earlier report with the one it prepared for IDC.

27        In light of the Ninth Circuit's instruction that "[t]he reasonableness of the procedures and

28  whether the agency followed them will be jury questions in the overwhelming majority of cases,"

United States District Court
Northern District of California

United States District Court
Northern District of California

*Guimond*, 45 F.3d at 1333, the court finds that the issue of the reasonableness of Defendant's procedures and whether Defendant followed those procedures should be decided by a jury.

    **B.**    **Whether Genuine Issues of Material Fact Exist as to Defendant's Allegedly Willful Noncompliance**

Defendant moves for summary judgment on Plaintiff's claims that Defendant willfully violated sections 1681e(b) and 1681i(a). Defendant contends that its procedures were reasonable under section 1681e(b), and that any action in violation of 1681i(a) was due to an employee's isolated mistake in transcribing Plaintiff's dispute. Defendant asserts that Plaintiff has no evidence of willfulness.

As explained above, under the FCRA, a plaintiff may demonstrate willfulness by showing a reckless disregard of statutory duty. *Safeco*, 551 U.S. at 56–60. A defendant acts in reckless disregard if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Bateman*, 623 F.3d at 711 n. 1 (quoting *Safeco*, 511 U.S. at 69). That is, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that is should be known." *Id.* (quoting *Safeco*, 511 U.S. at 68). "The statutory requirement of willfulness does not require proof of an intent to cause harm, but only an intent to fail to comply with the FCRA." Courts in this circuit have found that "[w]illfullness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007); *see also Heaton v. Soc. Fin., Inc.*, No. 14-CV-05191-TEH, 2015 WL 6744525, at *6 (N.D. Cal. Nov. 4, 2015), *motion to certify appeal denied*, No. 14-CV-05191-TEH, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ("The mixed nature of the willfulness inquiry—with issues of law and fact intertwined—is the precise reason the question is best reserved for a finder of fact.") (citing *Smith v. LexisNexis Screening Sols., Inc.*, 76 F. Supp. 3d 651, 665 (E.D. Mich. 2014)); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. CV 11-10089 SJO AGRX, 2012 WL 4903291, at *7 (C.D. Cal. Oct. 16, 2012) (holding that in the context of willful violations of 15 U.S.C. § 1681s-2(b) of the FCRA, if the plaintiff succeeds in making his prima facie case, the furnisher must demonstrate legal certainty that it met all obligations to avoid having

the reasonableness of its response qualify as a triable issue of fact).

**1.   Evidence of Willfulness for Section 1681e(b) Claim**

Plaintiff argues that he has presented adequate evidence of willfulness on his section 1681e(b) claim.  To support this claim, Plaintiff asserts that: 1) Defendant relied exclusively on data from two sources (MDPS and Experian), both of which had warned Defendant regarding the accuracy of the data, and in the case of MDPS, specifically cautioned against using the data to create name matches or to make employment decisions; 2) Defendant knew that it could not rely solely on data from Experian and the MDPS, so it implemented other procedures and policies to ensure accuracy, but did not follow those procedures with respect to Plaintiff's report; 3) Defendant matched records based on a misspelling of Plaintiff's name, despite the lack of support showing that fuzzy name matching promotes accuracy; 4) Defendant's researcher found no records matching Plaintiff's name and date of birth at the Hennepin County courthouse; 5) Defendant failed to examine the underlying court documents for the records that it reported as matching Plaintiff, even though Defendant's researcher found no records at the courthouse that matched Plaintiff's name; 6) the underlying records show that the reported convictions do not belong to Plaintiff; and 7) Defendant had prepared a recent prior report on Plaintiff that did not contain any of the erroneous criminal conviction records.  Plaintiff contends that these are sufficient facts from which a reasonable jury could conclude that Defendant was aware or should have been aware of an obvious risk that Plaintiff's report was inaccurate, and that its procedures were inadequate to assure maximum possible accuracy.

In reply, Defendant argues that a number of Plaintiff's factual and legal contentions are incorrect.  In so doing, Defendant appears to take the erroneous position that in order to defeat Defendant's motion for summary judgment, Plaintiff must prove as a matter of law that Defendant willfully violated section 1681e(b).  *See, e.g.,* Def.'s Reply at 9-10 ("A disclaimer does not render a source unreliable;" "Taylor has not pointed to any authority . . . that indicated that using name variation logic is unreasonable as a matter of law").[9]  That is not the standard.  The inquiry at

_____

[9]  Although a disclaimer does not necessarily render a source unreliable, this does not preclude a reasonable jury from finding that it was unreasonable for Defendant to rely on the information.

United States District Court
Northern District of California

1    summary judgment is whether there is sufficient evidence from which a reasonable jury could

2    conclude that Defendant willfully violated section 1681e(b).

3         Defendant also returns to the *Stewart* case, which it cites for the proposition that "[c]ase

4    law makes clear that reasonableness does not require consumer reporting agencies to review

5    underlying court records before reporting information." Def.'s Reply at 11. This reliance is

6    misplaced. As explained earlier, the portion of *Stewart* relied upon by Defendant is dicta.

7    *Stewart*, 2010 WL 3853114 at *10. *Stewart* does not stand for the proposition that, as a matter of

8    law, CRAs are not required to review underlying court records before reporting information. Even

9    if *Stewart* had made such a ruling on the merits, as an opinion of a district court from another

10   circuit, it is not binding on this court.

11        Two cases raise issues similar to the present one. In *Adams v. National Engineering*

12   *Service Corporation,* 620 F. Supp. 2d 319, 323–325 (D. Conn. 2009), the subject report included

13   criminal records belonging to "Debra Adams" and "Debra Jean Adams" for a background

14   investigation concerning "Deborah Adams." The court noted that "a reasonable jury could find

15   that, in preparing a background investigation report for [plaintiff] which included convictions

16   pertaining to an individual with a different first name from a different state, [defendant] created

17   'an unjustifiably high risk of harm . . . so obvious that it should [have been] known.'" *Id.* at 330 n.

18   7 (alteration in original) (quoting *Safeco,* 551 U.S. at 68). Based on this, the *Adams* court denied

19   the defendant's motion for summary judgment on plaintiff's claim for willful violation of section

20   1681e(b). *Id.* at 330.

21        In *Smith v. LexisNexis Screening Sols., Inc.*, 76 F. Supp. 3d 651, 664 (E.D. Mich. 2014),

22   the court considered whether there was sufficient evidence to raise a jury issue as to whether the

23   defendant willfully violated section 1681e(b) in the context of a Rule 50(a) motion. The court

24   found that:

> [A] jury could reasonably conclude that Defendant's practice of not ever requiring
> employers to provide consumers' middle names, even where middle names are
> available, could pose an unjustifiably high risk of harm that was so obvious that
> Defendant should have been aware of it. Testimonial evidence established that

25

26

27

28

United States District Court
Northern District of California

> Plaintiff's name was a common one, and yet Defendant employed no practice or policy to address such an obvious issue. And when faced with glaring evidence of a mismatch between the credit report—listing a Dave Smith with middle initial "A" from Michigan—and the criminal records—reflecting Florida convictions for Alabamian David Oscar Smith—Defendant did nothing to clear up this obvious discrepancy. A jury could reasonably find that these deficiencies were not merely "careless," but a disregard of a risk of inaccurate information so obvious that the actions amount to recklessness. Further, given how easily preventable the injury in this case would have been—by requiring a middle name field and/or requiring even minimal follow-up for record discrepancies—a jury could readily find that the risk here was unjustifiably high.

*Id.* The *Smith* court concluded that there was sufficient evidence on the issue as to whether the defendant willfully violated section 1681e(b) on which the jury could base its verdict, and the mix of evidence on the issue of willfulness appropriately went to the jury. *Id.* at 665.

 "Willfulness under the FCRA is generally a question of fact for the jury." *Edwards*, 527 F. Supp. 2d at 1210. The court finds that Plaintiff has presented sufficient facts from which a reasonable jury could conclude that Defendant acted willfully in violating section 1681e(b).

### 2. Evidence of Willfulness for Section 1681i(a) Claim

Defendant also argues that it should be granted summary judgment as to whether it willfully violated section 1681i by failing to reinvestigate the two misdemeanors listed on Plaintiff's background report because: 1) Plaintiff lacks any evidence of willfulness; 2) Defendant's actions amount, at most, to negligence, not willfulness; 3) the fact that Defendant provides annual FCRA dispute resolution training, has quality control measures, and dispute-related audits negates any claim that it willfully violated the FCRA.

In opposition, Plaintiff puts forth three arguments: 1) Defendant had no quality control measures to double-check that disputes were accurately logged; 2) the manner in which Plaintiff's report was prepared should have put Defendant on notice of the obvious risk that the misdemeanors were erroneous, especially once it determined that the felony convictions were wrongly attributed to Plaintiff; and 3) Defendant should have double-checked the dispute before issuing Plaintiff's revised report. Plaintiff contends that a reasonable jury could find that Defendant "was reckless in designing dispute procedures that are rendered completely ineffective due to the failure of a single employee to accurately transcribe a written dispute into First

Advantage's system." Pl.'s Opp'n at 17.

As explained above, a plaintiff may demonstrate willfulness by showing a reckless disregard of statutory duty. *Safeco*, 551 U.S. at 56–60.  Plaintiff presents a theory that Defendant's conduct was reckless because Defendant failed to follow quality control measures to make sure that disputes were accurately logged.  Other courts have held that the jury should decide the question of willfulness where the evidence supports that a CRA's policies are cursory or do not appropriately address the specifics of individual disputes.  *See, e.g., Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008) (remanding question of willfulness of section 1681i violation where CRA failed to perform a simple search and overlooked an unambiguous document in the court file showing that no adverse judgment had been entered against the consumer); *Fregoso*, 2012 WL 4903291, at *10 (denying motion for summary judgment on willful violation of FCRA where plaintiff provided evidence that furnisher of information, through its employee, cursorily considered all disputes using a semi-automated process, ignored material distinctions in records, and declined to consider any information beyond that provided in the account summary); *Barron v. Trans Union Corp.*, 82 F. Supp. 2d 1288, 1299 (M.D. Ala. 2000) (denying motion for summary judgment on willfulness with respect to section 1681i claim where plaintiff represented that the defendant "ignored his dispute"); *Cortez v. Trans Union LLC,* 617 F.3d 688, 720–23 (3d Cir. 2010) (finding that decision to disregard certain information from FCRA compliance activities constituted reckless disregard of the statute); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1076 (D. Or. 2011) (noting that "a reasonable jury could find that a CRA acted in reckless disregard of its duties by relying exclusively on automated procedures").

Defendant argues that it promulgated and followed reasonable procedures for reinvestigation.  However, as stated above in the analysis of Plaintiff's motion, Defendant may not raise this affirmative defense for the first time at summary judgment, because doing so would prejudice Plaintiff.  In any event, to establish that it promulgated and followed reasonable procedures, Defendant relies solely on two paragraphs of the O'Connor Supplemental Declaration. Def.'s Reply at 12 -13 (citing O'Connor Suppl. Decl. ¶¶ 2-3).  These paragraphs state, in full:

> First Advantage provides a number of different mechanisms for consumers to dispute a background report.  For example, consumers may use a dispute form to

indicate the case numbers or report entries that they are disputing.  First Advantage also accepts letters from consumers describing the nature of the dispute.  In addition, consumers may call First Advantage and verbally lodge a dispute.  The majority of disputes received by First Advantage originate from a phone call. Regardless of the nature in which a dispute is made, First Advantage employees are instructed and trained to enter the dispute into First Advantage's Consumer Dispute Database exactly as conveyed by the consumer.

O'Connor Suppl. Decl.  ¶¶ 2-3.  Even if the court were to consider this defense, the proferred evidence is insufficient to establish that Defendant's procedures were, as a matter of law, not reckless under the FCRA.

The court finds that a reasonable jury could determine that Defendant acted with reckless disregard in conducting its reinvestigation of the disputed criminal convictions.

Defendant's motion is therefore denied.

## VII.   CASE MANAGEMENT

The court sets a case management conference for October 5, 2016 at 1:30 p.m.  The parties' joint case management statement is due September 28, 2016.

**IT IS SO ORDERED.**

Dated: September 13, 2016

_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

24